UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY SCHAUB,

       Petitioner,

                                     CASE NO. 2:08-CV-12578

v.                                JUDGE STEPHEN J. MURPHY, III
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

NICK LUDWICK,

       Respondent.

_____/


## REPORT AND RECOMMENDATION

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, it should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Schaub is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.    On April 18, 2006, petitioner pleaded guilty to one count of possession with intent to deliver methamphetamine, MICH. COMP. LAWS § 333.7401(2)(b)(i), following a plea agreement in the Saginaw County Circuit Court.  On June 13, 2006, he was sentenced to a term of 130 months-to-20 years' imprisonment.

3.    Petitioner filed an application for leave to appeal to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.    Due Process requires resentencing and specific performance where defendant

1

pleaded guilty believing that he was going to receive a minimum sentence of between 24 to 36 months, or in the alternative, defendant's conviction violates his state and federal constitutional rights because it is based upon an unfulfilled promise of leniency by defense counsel and was thus involuntary and defense counsel was ineffective.

II.    Defendant is entitled to resentencing because the sentencing guidelines range was enhanced on the basis of facts not proven to a jury beyond a reasonable doubt, in violation of the sixth and fourteenth amendments.

The court of appeals denied petitioner's application for lack of merit in the grounds presented. *See People v. Schaub*, No. 278708 (Mich. Ct. App. Aug. 22, 2007) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Schaub*, 480 Mich. 1011, 743 N.W.2d 37 (2008).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 17, 2008. As grounds for the writ of habeas corpus, he raises the two issues he raised in the state courts.

6.    Respondent filed his answer on Oct. 31, 2008. He contends that petitioner's claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

The following is taken from the Pre-Sentence Investigation Report, May 18, 2006, Agent's Description of Offense (emphasis added)

On or about 7-6-05, officers made a routine traffic stop in reference to speeding. During the traffic stop, it was learned that the vehicle was rented from Enterprise Rental and the driver of the vehicle gave consent to search the car. Please note there were three individuals in the vehicle, the driver Melvin Stanley, Drew Scheele, and [Petitioner]. While searching the vehicle, officers found a clear sandwich bag containing several yellow-colored pills in the side pocket of a duffel bag. The pills had the letter "P" stamped on them. The trooper was concerned that the pills were Ecstasy. Scheele stated the pills were his, but that they were over-the-counter nasal decongestant. The officer also located a digital pocket scale in the

vehicle. Just then, the driver Stanley revoked his consent to search. Therefore, the officer's search was stopped immediately and the digital scale was placed in the back seat of the vehicle. [Petitioner] stated that the scale was his and he used it for "weighing things." He stated he needed it for weighing parcels, as he worked for Federal Express. It was later determined that [Petitioner] did not work there. Due to the fact the officers noted the rental agreement for the vehicle had someone else's name on it, they contacted the rental company and due to the fact the vehicle was overdue by a week and the bill was over $1,700, the rental company requested the vehicle be impounded so that Enterprise could reclaim possession of it.

In the meantime, the K-9 Trooper came out to search the vehicle as a result of it being impounded. The K-9 located white residue on the scale. The troopers also continued their search. One of the officers pulled down the insulating liner on the top of the hood, near the driver's side fender. When he did this, two clear plastic sandwich bags fell out. Inside these plastic bags were several red and orange tablet-type pills. The red ones were marked with butterflies and the orange ones were marked with "m's". There was concern that these particular pills were Ecstasy. As the three males were being placed under arrest, [Petitioner] stated, "That's all mine, I put it up there when these guys were asleep, and they didn't know I had it." He admitted they were Ecstasy. He said there were 198 hits. Please note when counted at the BAYNET office, there were 202 hits. [Petitioner] was placed under arrest and the vehicle was towed and turned back over to Enterprise Rental.

The suspected drugs were then taken to the Department of Michigan State Police Forensic Science Division. The residue from the scale was deemed insufficient for analysis. The first yellow tablets located did not indicate the presence of controlled substance. The red tablets showed the presence of Methamphetamine and the orange tablets with the small letter "m" showed the presence of Methylenedioxy-methamphetamine.

At petitioner's plea hearing, the following colloquy took place:

MR. FEHRMAN:  Paul Fehrman for the People. Your Honor, we have a plea agreement in this case. Mr. Schaub will be pleading guilty as charged to possession with intent to deliver methamphetamine, otherwise known as Ecstasy. In exchange for that guilty plea, we will be recommending that the Court not exceed 24 months on the minimum sentence. It's my understanding that that is in within the guideline range, and I just must say that we are not going to make a recommendation that will be beneath the guidelines. Say, for example, if it's 30 months at the bottom of the guidelines. Say, for example, if it's 30 months at the bottom of the guidelines, we're going to increase that. But as we've calculated the guidelines, our offer is a 24-month cap.

MR. COWDRY: That's a correct statement, Your Honor. Good afternoon. William Cowdry on behalf and with Mr. Schaub. I've talked it over with Mr. Schaub. He is willing to accept that offer.

THE COURT: Raise your right hand.

THE CLERK: You do solemnly swear that the testimony you shall give in the cause

here pending shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT: I do.

THE COURT: Your name is Gary Lee Schaub?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Nineteen.

THE COURT: How far did you go in school?

THE DEFENDANT: Tenth grade.

THE COURT: I'm sorry?

THE DEFENDANT: Tenth grade.

THE COURT: Where do you live?

THE DEFENDANT: Traverse City, Michigan.

THE COURT: What's your address?

THE DEFENDANT: 413 15th Street.

THE COURT: What's 659 Bay Hill Drive?

THE DEFENDANT: I switched my address. I sent you guys a letter probably a month and a half ago.

THE COURT: What is it?

THE DEFENDANT: 413 15th Street.

THE COURT: What's 4350 Golden Rod?

THE DEFENDANT: That's my ex-girlfriend's house.

THE COURT: Your attorney has indicated to the Court that you're entering a plea of guilty to delivery-manufacture of methamphetamine, is that correct?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the matter of the plea with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand the nature of the charge made against you?

THE DEFENDANT: Yes.

THE COURT: Are you freely and voluntarily pleading guilty to this charge?

THE DEFENDANT: Yes.

THE COURT: Are you on probation or parole?

THE DEFENDANT: Yes.

THE COURT: Which one?

THE DEFENDANT: Probation.

THE COURT: For What?

THE DEFENDANT: Malicious destruction.

THE COURT: Why don't you tell me right now what your past criminal record is.

THE DEFENDANT: I've got five MIPs. I've got an unlawful driving away a motor vehicle.

THE COURT: What other drug cases do you have?

THE DEFENDANT: Use of marijuana.

THE COURT: Use of marijuana. Now, the MIPs, was that all alcohol, or was it any kind of drugs?

THE DEFENDANT: Alcohol.

4

THE COURT: All right. What else?

THE DEFENDANT: A couple of B & Es, and that's it.

THE COURT: I'm not going to take this recommendation. Have a seat.

(A break is taken.)

THE COURT: You may proceed.

MR. FEHRMAN: Your Honor, Paul Fehrman for the People. Mr. Schaub is going to be pleading guilty as charged, and we're recommending that the Court not exceed guidelines.

MR. COWDRY: That's a correct statement of the plea agreement, Your Honor. William Cowdry for and with Mr. Schaub.

THE COURT: Would you raise your right hand.

THE CLERK: You do solemnly swear that the testimony you shall give in the cause here pending shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT: Yes.

THE COURT: Your name is Gary Lee Schaub?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Nineteen.

THE COURT: How far did you go in school?

THE DEFENDANT: Tenth grade.

THE COURT: And where do you live?

THE DEFENDANT: 413 15th Street, Traverse City, Michigan.

THE COURT: Your attorney has indicated to the Court that you're entering a plea of guilty to delivery-manufacture of methamphetamine, is that correct?

THE DEFENDANT: Yes.

THE COURT: Actually, possession with intent to deliver, is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you discussed the matter of the plea with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Do you understand the nature of the charge made against you?

THE DEFENDANT: Yes, I do.

THE COURT: Are you freely and voluntarily pleading guilty to this charge?

THE DEFENDANT: Yes.

THE COURT: Are you on probation or parole?

THE DEFENDANT: Yes.

THE COURT: All right. Do you understand that – is it probation?

THE DEFENDANT: Probation.

THE COURT: Not parole?

THE DEFENDANT: Not parole.

THE COURT: Do you understand that the judge that placed you on probation can revoke that status and sentence you to the maximum penalty on that charge because you're pleading guilty to a new charge?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you're pleading guilty to a felony, the

maximum penalty being 20 years in the state prison?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if your plea is accepted, you will not have a trial of any kind, and, therefore you're giving up certain rights that you would have at a trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you're waiving your right to be tried by a judge or a jury?

THE DEFENDANT: Yes.

THE COURT: To be presumed innocent until proved guilty?

THE DEFENDANT: Yes.

THE COURT: To have the prosecutor prove your guilt beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: To have witnesses against you appear at the trial?

THE DEFENDANT: Yes.

THE COURT: To question any witnesses who would be at the trial?

THE DEFENDANT: Yes.

THE COURT: To have the Court order any witnesses you would like for your defense to be at the trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you're waiving your right to remain silent?

THE DEFENDANT: Yes.

THE COURT: Also, not to have your silence used against you?

THE DEFENDANT: Yes.

THE COURT: Also, to testify if you wished?

THE DEFENDANT: Yes.

THE COURT: And do you understand that any appeal from the conviction and sentence pursuant to the plea would be by application for leave to appeal and not by right?

THE DEFENDANT: Yes.

THE COURT: Has anyone promised you anything other than that the Court would sentence you within the guidelines?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own choice?

THE DEFENDANT: Yes.

THE COURT: What is it that you did that makes you guilty?

THE DEFENDANT: I possessed Ecstasy.

THE COURT: All right. Is that also known as MDMA and methamphetamine?

THE DEFENDANT: Yes.

THE COURT: And did you possess it with the intent to deliver it to others?

THE DEFENDANT: No.

THE COURT: Really? How many pills did you have?

THE DEFENDANT: 198.

THE COURT: Were you going to take them all for yourself?

THE DEFENDANT: No.

THE COURT: What were you going to do with them?

THE DEFENDANT: I was going to have a party.

THE COURT: All right. So you were going to give them to others?

THE DEFENDANT: Yes.

THE COURT: So that's delivery.

THE DEFENDANT: Oh, okay.

THE COURT: Did that occur on July 8, 2005, at northbound I-75 and King Road in Bridgeport Township?

THE DEFENDANT: No, it was July 6.

THE COURT: What did I say?

THE DEFENDANT: No, it was July 6.

THE COURT: What did I say?

THE DEFENDANT: The 8th.

MR. COWDRY: You said July 8.

THE COURT: I'm sorry, July 6th. Did it happen in Bridgeport on the freeway?

THE DEFENDANT: Yes, I-75.

THE COURT: Any questions by the People?

MR. FEHRMAN: No questions.

THE COURT: Mr. Cowdry.

MR. COWDRY: No questions. Thank you.

THE COURT: Do counsel believe the Court has complied with the court rule?

MR. FEHRMAN: People are satisfied.

MR. COWDRY: As is defense, Your Honor.

THE COURT: The Court has not agreed upon the possible sentence with the prosecutor, defendant, or anyone acting in the interest of either. The Court is convinced that the plea is understandingly made, that it is voluntary and accurate. The plea is accepted. The matter is referred to the Department of Corrections. The Court is signing an order for DNA profiling. Defendant is remanded to the custody of the sheriff. Bond is revoked.

Plea Tr., at 3-12.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Involuntary Plea*

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17

F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11;

*Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect

to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on

going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2.     *Analysis*

Petitioner argues several things in his first claim. Petitioner first argues the sentence he

received is not what he bargained for and asks for specific performance which he believes would

consist of the court sentencing him within a minimum range of 36 to 60 months. Before addressing

the substantive issue of whether or not petitioner did in fact receive what he bargained for, the claim

that he is entitled to specific performance needs to be analyzed and ultimately rejected. Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see id* at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992). Hence, even if the government did violate the plea agreement, petitioner is not automatically entitled to specific performance. In any event, here the government did not violate the terms and conditions of the plea agreement. The plea agreement consisted of two promises; the petitioner's promise to plead guilty and prosecutor's promise to recommend that petitioner receive the appropriate mandatory minimum. The prosecutor did not promise petitioner that he would receive 24-36 months or even that he would receive the minimum sentence allowable under the guidelines; rather, the prosecutor promised that he would make a recommendation to the court and he did so.

Petitioner also claims that his guilty plea was not given voluntarily because it was based on an unfulfilled promise of leniency by his defense counsel. This argument does not hold up to scrutiny. A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S.

614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645. In this situation the trial judge asked petitioner several questions to ensure that he was not under any false impressions when he decided to plead guilty. He asked "are you freely and voluntarily pleading guilty to this charge?" Plea Tr., at 7. The judge then asked "do you understand that your pleading guilty to a felony, the maximum penalty being 20 years in the state prison?" to which petitioner responded yes. *Id* at 8. The judge also asked "has anyone promised you anything other than that the Court would sentence you within the guidelines?" to which the petitioner responded no. *Id* at 10. Petitioner was then informed of the rights he was waiving as a result of pleading guilty. The nature of the questions asked and petitioner's responses indicate that he was informed of the consequences of his pleading guilty and that his plea was voluntary.

The voluntary nature of petitioner's plea is also evident in his reaction to remarks made by the judge prior to petitioner formally entering a plea of guilty. The trial judge had heard the defendant's prior infractions and clearly stated that he would not be accepting the prosecutor's recommendation to give petitioner the minimum under the guidelines. A statement from the judge indicating that he would not follow the prosecutor's recommendation clearly indicated that the court would not be lenient. In spite of this, petitioner decided to plead guilty and only later alleged that it was based on his counsel's promise of leniency; a promise that is not visible in the record. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Hence petitioner's responses to the judge's questions in court carry a strong presumption of veracity; one that petitioner has failed to overcome by his conclusory allegations regarding his counsel. The

record establishes that petitioner made an informed decision to plead guilty. The fact that he does not like the result of that decision does not mean it was not an informed and voluntary one. Therefore, habeas relief should not be granted on the basis of this claim.

Petitioner also alleges that his counsel was ineffective in advising him to accept the plea bargain. Petitioner has a Sixth Amendment right to effective assistance of counsel; however he fails to satisfy the two pronged test required to prove that his counsel was ineffective. *See Strickland*, 466 U.S. at 687. With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Here defense counsel advised petitioner to take the plea agreement because he felt the damning statements that were ruled admissible would prevent petitioner from succeeding in a trial. Counsel explained his position in a letter to petitioner stating "[a]s you are aware, our Motion to Suppress the Search was denied. This means that if we go to trial the statements you made will be admitted into evidence because those statements were spontaneous and not as a result of any questions asked of you. Because of this, I honestly feel that our chances of winning an acquittal on the case are absolutely zero." Pet'r's Br., Appx., Letter from William R. Cowdry dated 3/29/06. Counsel was referring to remarks made by petitioner that indicated the pills, later identified as ecstasy, were his. In order to show that counsel was ineffective, "[d]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Petitioner has failed to overcome this presumption. Looking at the documents offered by petitioner, it is evident that his counsel did not have all of the information in regard to the criminal act and that his projections of sentence length were reasonable under the circumstances. Counsel elaborated on his lack of information stating "based on what I knew of [Petitioner] and what I

15

communicated to the prosecutor, I calculated the guidelines to be like 24 to 48. Now, unfortunately, [Petitioner] didn't tell me a few things that I should have known, and I talked to him about that." Resp'd answer, at 12 (quoting Sentence Hearing dated 6/3/06, at 6). Petitioner has not established his claim that counsel was ineffective in estimating petitioner's possible sentence length nor has he established that counsel promised or guaranteed him a specific sentence length. Given the overwhelming evidence available against the petitioner in this case, it was well within counsel's discretion to advise his client to take a plea bargain with some hope of leniency rather than go through a trial that counsel rightly believed petitioner would lose.

Because the first prong of the *Strickland* test is not satisfied, there is no need to go into the second prong because "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Here, the claim of ineffective assistance of counsel with regard to the plea agreement is not viable because of this failure. However the prejudice prong of the *Strickland* test is also not satisfied. In order to satisfy the prejudice prong, with respect to counsel's advice regarding a plea agreement, "the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted." *Garrison*, 156 F. Supp. 2d at 829. In this case, given the amount of pills found in the rental car and petitioner's admissible statements admitting that the pills were ecstasy belonging to him, there was not a reasonable chance that he would have been acquitted. Because of this and for the reasons stated above, petitioner's first claim for habeas relief should be denied.

E.     *Sentencing Guidelines Enhancement*

Petitioner is not entitled to resentencing because his claim that the enhancement of the guidelines minimum range was made on the basis of facts not proven to a jury beyond a reasonable

doubt does not violate petitioner's Sixth and Fourteenth Amendment rights. Petitioner contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance

between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violated the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to exercise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool*, 470 Mich. 715, 730, 684 N.W.2d 278, 286 (2004); Mich.Comp.Laws § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan*, 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, 666 N.W.2d 231, 236 (2003) (discussing Mich.Comp.Laws § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool*, 470 Mich. at 730, 684 N.W.2d at 286.

*Blakely* is inapplicable here because *Blakely* is concerned only with the maximum penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730, 684 N.W.2d at 286; MICH.COMP.LAWS § 769.8. Petitioner's plea-based conviction on the charge of possession with intent to deliver methamphetamine, therefore, contained all of the factual findings necessary to impose the statutory maximum (twenty years) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.")

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court has explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime-and thus the domain of the jury-by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly exempted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his legal *right* to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Mays v.* Trombley, 599 F.3d 490, 496-97 (6th Cir. 2010); *Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730, 684 N.W.2d at 286. Accordingly, the Court should conclude that the petitioner is not entitled to habeas relief on this claim.

F.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

As stated in the previous sections, the issues raised by petitioner do not warrant granting habeas relief. As to the issue of appealability, the issues raised and evidence presented are not of a kind about which reasonable jurists would differ. In regards to the first claim concerning the voluntary nature of the plea, petitioner was fully informed of the nature of the plea agreement. The plea transcript clearly shows that the agreement was followed and that he was fully informed of the possible consequences of his guilty plea. He was informed about the range of the sentencing guidelines and he was sentenced within that range. The ultimate basis for this claim is that he was not given the sentence that he expected but this is not a basis for relief. The second issue he raises, that his sentence was enhanced by a fact not proven beyond a reasonable doubt in violation of *Blakely* also fails. This circuit has ruled on numerous occasions that *Blakely* does not apply to enhancing minimum sentences as long as the maximum sentence does not increase. For the reasons stated above a certificate of appealability should not be granted.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/15/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 15, 2010.

s/Eddrey Butts
Case Manager